KLEIN, J.
BDO Seidman, an accounting firm, appeals a verdict rendered against it for negligent tax advice it gave to the appel-lee, British Car Auctions (“BCA”). Seid-man contends that under Tennessee law, which controls, the statute of limitations had run. We agree and reverse for entry of a judgment in favor of Seidman.
Tennessee law, which the parties agree applies, is different from Florida law in two respects. First, Tennessee has a one year statute of limitation for accounting malpractice suits. § 28-3-104(a)(2), Tennessee Code Annotated. Second, a cause of action for professional malpractice accrues as soon as plaintiff has suffered some damage and knows or should have known that the damage was caused by the defendant’s negligence. Kohl v. Dearborn and Ewing, 977 S.W.2d 528 (Tenn.1998).
In the 1980’s, Seidman advised BCA that the sale of a subsidiary would result in favorable tax treatment in regard to investment tax credits. BCA executed the sale based on that representation but, several years later, in early 1992, BCA was formally advised by IRS that an ongoing audit was being expanded to include questioning the investment tax’credits. BCA requested Seidman to assist it with the audit of the investment tax credits and Seidman continued to represent plaintiff in that regard as well as other areas.
*1083 On September 15, 1992, the IRS rejected arguments made on behalf of BCA in regard to the investment tax credits, and on September 18, 1992, BCA sent Seidman a letter which said in part:
As you are aware, the Internal Revenue Service has been auditing [our tax return] for the tax year ended July 31, 1987. In connection with that audit, we have advised you that the Revenue Agent has challenged the investment tax credit[s] ... which [were] claimed on that return. Specifically, the Revenue Agent has taken the position that the ... rules do not permit [us to] us[e] the investment tax credits....
Based on [Seidman’s] advice, [British Car] sold certain land ... for a gain of $3,336,942.... In calculating the tax shown on th[e] [1987] return, [the] investment tax credits [were] claim[ed] [to offset the land-sale tax].
The sale of the land occurred solely because BDO Seidman advised that investment tax credits were available to shelter most of the gain. There was no reason to undertake this transaction other than for the tax benefits!...
We demand that BDO Seidman pay to ADT, Inc. [British Car’s successor] (1) the sum of $1,134,560, which represents the Federal income tax on the capital gain [from the sale of the land], plus interest ... plus, any penalties and legal fees, (2) any interest and penalties which the Service may assess with respect to the disallowance of the investment tax credits ..., and (3) state income taxes of $179,232, which was paid as a result of the capital gain [on the sale of the land], together with interest from 1987....
[W]e do not intend to pursue this mat- . ter any further with the Internal Revenue Service because the expenditure of additional monies and time would not be productive based upon the existing case law, regulations, and long history of the [IRS] rules.
Please contact me within the next ten (10) days to arrange for payment.
Notwithstanding this letter, Seidman continued to represent BCA in regard to the investment tax credits and advised BCA that there were alternative methods for reducing BCA’s overall tax liability. Seidman continued to exert efforts on behalf of BCA in that regard until April, 1994, when IRS issued its final report which was unfavorable to BCA.
This malpractice law suit was filed by BCA on September 19, 1994. Seidman contends that the cause of action accrued, at the latest, when the 1992 letter was written, and is therefore barred by the Tennessee Statute of Limitations. BCA responds that the cause of action would not have accrued under Tennessee law until the IRS issued its final report in April, 1994, which would make the suit timely.
Kohl, 977 S.W.2d 528, is the most recent and most significant Tennessee Supreme Court decision explaining how to determine when a cause of action for professional malpractice accrues. In Kohl a law firm negligently advised the clients in 1986 that they could transfer their individual retirement accounts into the profit sharing plan of their business without incurring taxes. In September 1988 the clients received a letter from the IRS informing them that their 1986 tax return was being questioned in regard to the transfer, and on October 19, 1988, the client’s accountant wrote a letter to IRS attempting to resolve the problem. Although the matter was not resolved against the clients until later, the Tennessee Supreme Court held that the cause of action accrued, and the statute of limitations therefore began to run, from the date of the October 24, 1988 letter. The court explained:
The plaintiffs suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendants’ negligent advice. This *1084 would have been on October 19, 1988, when their accountant had to respond to the IRS’s request for information after it noted a conflict between the amount reported by the plaintiffs on their tax returns and the amounts reported by payers. The plaintiffs’ argument to the contrary notwithstanding, the fact that the IRS had not taken any formal action against the Kohls as of that date, such as filing suit against them or issuing a deficiency notice, is largely irrelevant because, as noted above, it was unnecessary for the plaintiffs to have suffered all the injurious effects or consequences of the defendants’ negligence in order for the statute to begin running.
... [I]t was unnecessary for the plaintiffs to have been aware that there had been a breach of the appropriate legal standard in order to be deemed to have discovered their right of action, but needed only to be aware of facts sufficient to put them on notice that an injury had been sustained as a result of [the] advice.
Id. at 533 (citations omitted).
Seidman argues that if the October 19, 1988 letter in Kohl triggered the running of the statute, then in the present case, at the very least, the statute of limitations started to run when BCA wrote the 1992 letter. BCA, however, presented evidence that it had only written that letter as a wake up call to Seidman in order to get Seidman to recognize the seriousness of the problem so that Seidman would exert more effort with IRS.
BCA acknowledged at oral argument that it was on notice, when it wrote the 1992 letter to defendant, that Seidman was negligent. BCA argues, however, that it had not suffered any damage at that point because Seidman represented to BCA that there were alternative methods for reducing BCA’s overall tax liability, and Seid-man continued to exert efforts on behalf of BCA in that regard.
The problem with BCA’s position is that BCA had retained outside tax counsel, a lawyer in private practice named Harry Shapiro, to assist BCA in the IRS audit which included questioning the investment tax credits. Shapiro testified specifically that he had been paid for representing BCA in regard to the investment tax credits dispute prior to September 1992. BCA demanded in its 1992 letter that Seidman pay “legal fees” BCA had incurred, along with the taxes, interest, and penalties.
The expense to BCA of having to use Shapiro to respond to IRS in the present case cannot be distinguished- from the clients having had their accountant respond to IRS in Kohl. A portion of Kohl we quoted above bears repeating:
The plaintiffs suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendants’ negligent advice. This would have been on October 19, 1988, when their accountant had to respond to the IRS’s request for information after it noted a conflict between the amount reported by the plaintiffs on their tax returns and the amounts reported by payers.
Kohl, 977 S.W.2d at 533.
BCA’s argument that if Seidman had been successful in its further efforts, after the 1992 letter, BCA may not have had any damages, would be more persuasive if Florida law were applicable, but Tennessee law is different. In Carvell v. Bottoms, 900 S.W.2d 23 (Tenn.1995), Bottoms, while performing legal work for the Carvells, failed to include an easement in a warranty deed, and the Carvells were sued by the purchaser of the property. The Tennessee Supreme Court affirmed a summary judgment, holding that the statute of limitations began to run when the Carvells were sued because “they were clearly aware that there was at least a possibility that they- would incur liability because of Bottom’s actions.” Id. at 29. The court expressly disagreed with the Florida case of *1085 Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990). Id. at n. 5.
Viewing the evidence in a light most favorable to BCA, as we must do when considering Seidman’s motion for directed verdict, we conclude that the motion should have been granted. BCA “knew or should have known there was a potential problem,” Kohl, 977 S.W.2d at 533, when it wrote the 1992 letter. And it was undisputed that BCA had sustained damage prior to that letter in having to pay outside tax counsel for representation in regard to the audit which included the investment tax credits. We therefore reverse for entry of a judgment in favor of Seidman.
GUNTHER and FARMER, JJ„ concur.