802 So.2d 366 (2001)
BDO SEIDMAN, LLP, f/k/a BDO Seidman, a partnership, Appellant,
v.
BRITISH CAR AUCTIONS, INC., a corporation, and ADT Automotive, Inc., a corporation, Appellees.
No. 4D00-4297.
District Court of Appeal of Florida, Fourth District.
October 31, 2001.
Rehearing Denied December 26, 2001.
*367 Daniel S. Pearson, and Lenore C. Smith of Holland & Knight, LLP, Miami, for appellant.
Timothy J. McDermott, and J. Riley Williams of Akerman, Senterfitt & Eidson, P.A., Jacksonville, and Paul R. Regensdorf of Akerman, Senterfitt & Eidson, P.A., Fort Lauderdale, for appellee British Car Auctions, Inc., a corporation.
KLEIN, J.
The issue in this case is whether Florida's offer of judgment statute can be utilized in a case arising in Tennessee but litigated in Florida under Tennessee substantive law. We conclude that this should not be resolved under conflict of laws principles, and that the statute applies in this case.
British Car Auctions received tax advice in Tennessee from BDO Seidman, LLP, an accounting firm, and sued Seidman for professional malpractice in Florida. Prior to trial, each party made an offer of judgment pursuant to section 768.79, Florida Statutes (1991), but neither offer was accepted. A jury found Seidman to have been negligent and awarded damages of $3,200,662. British Car was awarded attorney's fees under section 768.79, and Seidman appealed both the damages and fees.
Applying Tennessee law, which the parties agreed governed, we held that the malpractice suit was barred by the Tennessee statute of limitations. BDO Seidman, LLP v. British Car Auctions, Inc., 745 So.2d 1082 (Fla. 4th DCA 1999).[1] We reversed for entry of judgment in favor of Seidman without reaching the issue of attorney's fees, which had become moot.
Following the mandate, the trial court entered judgment in favor of defendant Seidman, and Seidman moved for attorney's fees under its section 768.79 offer of *368 judgment. Acknowledging that it had taken a different position on the prior appeal, Seidman said that it had been mistaken when it argued that Tennessee law controlled the issue of attorney's fees. Ruling that Tennessee law "preempts" Florida law on the issue of fees, the trial court denied Seidman's motion, and Seidman appeals.
We first address British Car's argument that Seidman was estopped from changing its position and seeking fees under section 768.79. Both parties made offers of judgment pursuant to the statute and, at different times in the litigation, each party changed its position on the applicability of it. Neither side has been prejudiced by the other's change of position, which involved only a question of law. Both parties had equal opportunity, and similar difficulty, in attempting to find the answer to what was a question of first impression. There was accordingly no estoppel. See Metropolitan Dade County v. Jones Boatyard, Inc., 611 So.2d 512, 514 (Fla.1993); Chase & Co. v. Little, 116 Fla. 667, 156 So. 609, 611 (Fla.1934); Palm Beach County v. Palm Beach Estates, 110 Fla. 77, 148 So. 544, 548 (Fla.1933); Rafkind v. Simon, 402 So.2d 22, 24 (Fla. 3d DCA 1981).
Proceeding to the merits, Seidman and British Car both rely on a conflict of laws analysis. Seidman's reasoning reaches the result that section 768.79 is procedural and therefore applies. British Car's argument is that the statute is substantive and should not be applied to this out-of-state cause of action.
Section 768.79(1), Florida Statutes (1991), applies to "any civil action for damages filed in the courts of this state." (emphasis supplied.) This statute is clear, and on its face is applicable to this action for damages. It is also constitutional. See TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 611 (Fla.1995). We conclude that, because the statute is clear, it should be applied without engaging in a conflict of laws analysis.
As the Florida Supreme Court explained in City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769, 772 (1914):
Where a statute does not violate the federal or state Constitution, the legislative will is supreme, and its policy is not subject to judicial review. The courts have no veto power, and do not assume to regulate state policy, but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce statutes only when to do so would violate organic law.
Choice of law considerations, where laws of different states or nations are involved, involve public policy decisions. Restatement (Second) of Conflict of Laws § 6 (1971). In Hartford Accident & Indemnity Co. v. City of Thomasville, Ga., 100 Fla. 748, 130 So. 7, 8 (1930), the Florida Supreme Court explained:
The extent and scope to which the rule of comity will operate is not universal, but will be determined by each sovereignty under the controlling facts of the particular case. It does not require a court to enforce rights given by the statutes of another state to the prejudice of its own citizens, or when complete justice cannot be done, nor will the courts of one state enforce laws of another state which are repugnant to its own or to public policy.
When the Legislature enacted section 768.79, it was making a policy determination that attorney's fees should be recoverable under certain circumstances. The Florida Bar Re Amendment to Rules of Civil Procedure, 550 So.2d 442 (Fla.1989). Implicit in that policy determination was *369 the decision that the statute would apply to "any" civil action for damages.
If we were to engage in a conflict of laws analysis, which would involve applying other policies, it would, if we held the statute not applicable, violate the principle that a policy decision of a court "must yield to a valid, contrary legislative pronouncement." VanBibber v. Hartford Acc. & Indem. Ins. Co., 439 So.2d 880, 883 (Fla.1983). See also Brown v. Case, 80 Fla. 703, 86 So. 684 (1920)(in the absence of a statute to the contrary, conflict of law principles, based on public policy will be applied to determine whether the law of the forum state or the law of the state where the cause of action accrued will be applied).
No Florida court, so far as our research indicates, has applied a conflicts of law analysis in order to determine whether a statute, which is clear and constitutional, should be applied. In Weatherby Associates, Inc. v. Ballack, 783 So.2d 1138, 1143 (Fla. 4th DCA 2001), the issue was whether a court could assess attorney's fees for bringing a frivolous lawsuit, under section 57.105(1), Florida Statutes (1999), in a case in which Connecticut substantive law applied. Without engaging in a conflict of law analysis, we concluded that the statute applied because the plaintiff "filed and pursued a baseless lawsuit in a Florida court."
Our view that conflict principles should not be applied where the statute is clear is supported by the Restatement (Second) of Conflict of Laws § 6, cmt. b. (1971), in which it is stated:
The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid. On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application.... Provided that it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles. [emphasis supplied.]
Section 6 of the Restatement (Second) was relied on by the Florida Supreme Court in Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980).
Our conclusion that section 768.79 applies to all civil actions for damages brought in Florida courts is consistent with the legislative intent, which is to reduce litigation. Aspen v. Bayless, 564 So.2d 1081, 1083 (Fla.1990). An action for damages based on the substantive law of another jurisdiction has the same impact on the Florida court system as one based on the substantive law of Florida.
We acknowledge that the eleventh circuit has recently held that section 768.79 is substantive under Florida conflict of laws principles. McMahan v. Toto, 256 F.3d 1120 (11th Cir.2001). This decision is persuasive, but not binding on us. State v. Dwyer, 332 So.2d 333 (Fla.1976). We respectfully disagree with it. See Judge Gross' concurring opinion.
We therefore reverse and remand for the trial court to award attorney's fees to Seidman under its section 768.79 offer of judgment.
GROSS, J., concurs specially with opinion.
POLEN, C.J., dissents with opinion.
*370 GROSS, J., concurring specially.
I concur with Judge Klein's opinion. I write separately to note that even under a choice of law analysis, Seidman is entitled to recover fees under section 768.79, Florida Statutes (1991).[2] This is so because the offer of judgment statute is "procedural" under Florida choice of law terminology; it is part of the machinery of Florida's judicial process that promotes judicial economy.
British Car's main argument is straight-forward. "Tennessee law governs substantive matters in this dispute; Florida law controls procedural issues only." Tennessee law does not allow a prevailing party to recover attorney's fees; the Florida supreme court has described the right to attorney's fees under section 768.79 as "substantive." See Knealing v. Puleo, 675 So.2d 593, 596 (Fla.1996) (stating that section 768.79 contains "substantive provisions authorizing an award of attorney [sic] fees"); TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 611 (Fla.1995) ("The legislature has modified the American rule, in which each party pays its own attorney's fees, and has created a substantive right to attorney's fees in section 768.79."). Seidman agrees that "Tennessee law unquestionably governs the substantive issues because of Tennessee's significant relationship to the dispute," but asserts that the issue of its entitlement to fees is a "separate, procedural issue ... governed by Florida law."
The difficulty in this case arises because two bodies of lawFlorida constitutional law and choice of lawuse the same "substantive/procedural" terminology.
In the cases cited by British Car, the supreme court was considering the division of power between that court and the legislature under Article V, section 2(a), of the Florida Constitution. Section 2(a) provides that the "supreme court shall adopt rules for the practice and procedure in all courts." Id. That provision endows the supreme court "with exclusive authority to adopt rules for practice and procedure in the courts of this State." Dvorak, 663 So.2d at 611.
In cases like Knealing, Dvorak, Timmons v. Combs, 608 So.2d 1 (Fla.1992), and Leapai v. Milton, 595 So.2d 12 (Fla.1992), the supreme court addressed constitutional challenges to offer of judgment statutes[3] under Article V, section 2(a). The court's characterization of the statutory right to attorney's fees as "substantive" in those cases was an acknowledgment of the legislature's constitutional power to enact the statute, not a determination that the statute was "substantive" for all legal purposes. The values informing choice of law principles are different than those underlying an Article V separation of powers issue. Therefore, what is substantive or procedural for Article V purposes is not necessarily substantive or procedural for choice of law purposes. See Sun Oil Co. v. Wortman, 486 U.S. 717, 726, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (rejecting the concept that "there is an equivalence between what is substantive under the Erie [Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ] doctrine and what is substantive for purposes of conflict of laws").
As one commentator has observed:
The tendency to assume that a word which appears in two or more legal *371 rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them runs through all legal discussions. It has the tenacity of original sin and must be constantly guarded against.
COOK, THE LOGICAL AND LEGAL BASES OF CONFLICT OF LAWS, § 159 (1942) (quoted in EUGENE F. SCOLES & PETER HAY, CONFLICT OF LAWS § 3.3 n. 3 (2d ed.1992)). The Restatement (Second) of Conflict of Laws has abandoned "procedural" and "substantive" labels, observing that the characterizations "while harmless in themselves, have led some courts into unthinking adherence to precedents that have classified a given issue as `procedural' or `substantive,' regardless of what purposes were involved in the earlier classifications." Id. at § 122, cmt. b. Instead of classifying issues as procedural or substantive, the rules of the Restatement "face directly the question of whether the forum's rule should be applied." Id.
In a choice of law context, Florida maintains the traditional distinction between substantive and procedural matters. See Prestige Rent-A-Car, Inc. v. Advantage Car Rental & Sales, Inc., 656 So.2d 541, 544 n. 2 (Fla. 5th DCA 1995); Aerovias Nacionales De Colombia, S.A. v. Tellez, 596 So.2d 1193, 1195 (Fla. 3d DCA 1992); Guirlinger v. Goldome Realty Credit Corp., 593 So.2d 1135, 1136 n. 1 (Fla. 1st DCA 1992). As the forum state in this case, Florida law determines whether section 768.79 is substantive or procedural for choice of law purposes. See Fahs v. Martin, 224 F.2d 387, 397, 401 n. 6 (5th Cir. 1955); Smithco Eng'g, Inc. v. Int'l Fabricators, Inc., 775 P.2d 1011, 1017-18 (Wyo. 1989). Usually,
a court will apply foreign law only to the extent that it deals with the substance of the case, i.e., affects the outcome of the litigation, but will rely on forum law to deal with the "procedural" aspects of the litigation.
SCOLES & HAY, CONFLICT OF LAWS § 3.8 (2d ed.1992) (footnotes omitted); see Colhoun v. Greyhound Lines, Inc., 265 So.2d 18, 20 (Fla.1972). Substantive law generally "relates to the cause of action's rights and duties, whereas procedural law involves `the machinery for carrying on the suit.'" Smithco Eng'g, 775 P.2d at 1018 (quoting Roth v. Roth, 571 S.W.2d 659, 672 (Mo. App.1978) (quoting Shepherd v. Consumers Co-op. Ass'n, 384 S.W.2d 635 (Mo. 1964))).
To decide whether section 768.79 is substantive or procedural for choice of law purposes, it is helpful to consider those factors the Restatement identifies as pertinent to classifying an issue for choice of law purposes. Florida courts have often relied upon the Restatement to decide conflict of law matters. See, e.g., Bishop v. Fla. Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980); Aetna Cas. and Sur. Co. v. Huntington Nat'l Bank, 587 So.2d 483, 485-86 (Fla. 4th DCA 1991). Section 122 provides:
A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122. "The forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state." Id. at cmt. a.
Florida cases have identified the legislative objectives behind section 768.79. All pertain to how Florida's "judicial machinery functions."
The purpose of section 768.79 is to lead "litigants to settle by penalizing those who decline offers that satisfy the statutory requirements." MGR Equip. Corp., Inc. *372 v. Wilson Ice Enters., Inc., 731 So.2d 1262, 1264 (Fla.1999); see Aspen v. Bayless, 564 So.2d 1081, 1083 (Fla.1990) (stating that "purpose and intent" of section 768.79 is "to encourage parties to settle claims without going to trial"). Encouraging settlement lowers litigation costs for the parties and reduces the fiscal impact of litigation on the court system. See Allstate Ins. Co. v. Materiale, 787 So.2d 173, 176 (Fla. 2d DCA 2001) (Casanueva, J., concurring) (indicating that "[t]he main purpose of section 768.79" is "to encourage resolution of disputed claims without the unnecessary consumption of scarce judicial resources"); Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275, 1277-78 (Fla. 2d DCA 2000) (Casanueva, J., concurring in part, dissenting in part). The statute penalizes parties who "fail to act reasonably and in good faith in settling lawsuits." Eagleman v. Eagleman, 673 So.2d 946, 947 (Fla. 4th DCA 1996); accord Goode v. Udhwani, 648 So.2d 247, 248 (Fla. 4th DCA 1994). Early settlement of a case frees court time for the many other cases waiting to be heard.
Whether this lawsuit expended Florida's judicial resources is not a concern of Tennessee. The primary interest of section 768.79 is, in the words of the Restatement, how Florida's "judicial machinery functions." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122, cmt. a. In this case, a more realistic assessment of risk under the statute of limitations might have encouraged an early settlement instead of a lengthy jury trial and two appeals. Not to apply section 768.79 in this type of case would "impose an undue burden upon" Florida. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122, cmt. a. Lawsuits that arose elsewhere could willy-nilly consume Florida's judicial resources, while purely Florida cases would be subject to the penalty provisions of section 768.79. Jurisdictions with court dockets less crowded than Florida's might not share the value that early settlement of a case is a "consummation Devoutly to be wished." W. SHAKESPEARE, HAMLET, Act III, Scene I.
Application of section 768.79 to this case is consistent with the broad wording of subsection (1), which declares that it applies "in any civil action for damages filed in the courts of this state." (Italics supplied). Significantly, the legislature did not limit the statute to cases "arising" or "accruing" in Florida, or to cases controlled by Florida substantive law. The plain meaning of the statute supports its use in this case.
Two other Restatement factors bolster the conclusion that section 768.79 should apply here. The offer of judgment statute is not "one to which the parties [were] likely to have given thought in the course of entering" into the accountant-client relationship. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122 cmt. a. Parties to a contract "do not usually place reliance on the applicability of the rules of a particular state to issues that would arise only if litigation should become necessary." Id. Also, the offer of judgment statute was not "likely to affect the ultimate result of the case." Id. Section 768.79 comes into play only after the determination of the "ultimate result."
Under the terminology of the Florida cases, the offer of judgment statute is a matter of procedural law for choice of law purposes. Section 768.79 is a part of Florida's "judicial machinery." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122, cmt. a. It is a "procedural device for promoting judicial economy." Paine Webber Jackson & Curtis, Inc. v. Winters, 22 Conn.App. 640, 579 A.2d 545, 553 (1990) (using Connecticut offer of judgment statute to penalize defendant for wasting Connecticut's judicial resources). British Car could have avoided the operation of the statute by bringing suit in Tennessee.
*373 This case is similar to Weatherby Associates, Inc. v. Ballack, 783 So.2d 1138 (Fla. 4th DCA 2001). An issue in Weatherby was whether a court could assess attorney's fees under section 57.105(1), Florida Statutes (1999), in a lawsuit arising out of an employment agreement that provided for Connecticut law to apply to any such litigation. Section 57.105(1) permits the award of attorney's fees where the action is frivolous, where there is a total lack of justiciable issues of either law or fact. See, e.g., Muckenfuss v. Deltona Corp., 508 So.2d 340, 341 (Fla.1987).
Weatherby held that the award of fees under section 57.105(1) was proper, "because Weatherby filed and pursued a baseless lawsuit in a Florida court." Weatherby, 783 So.2d at 1143. Implicit in this ruling is the finding that section 57.105(1) fees were "procedural" for choice of law purposes, so that a Florida court could properly apply it in the interest of justice and efficient judicial administration. This court rejected Weatherby's argument that such fees should not be awarded because Connecticut's law governed the substantive issues in the case.
Both sections 57.105(1) and 768.79 impose sanctions for certain conduct occurring during litigation. Section 57.105(1) is akin to a court's inherent power to sanction litigants who act in bad faith or otherwise abuse the judicial process. See Patsy v. Patsy, 666 So.2d 1045, 1047 (Fla. 4th DCA 1996). Numerous cases have described the offer of judgment statute as being "punitive." See, e.g., Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776, 778 (Fla. 4th DCA 1999) (describing section 768.79 as "punitive in nature"). As Seidman argues, the goals of the two statutes are the sameto ease the burden on Florida courts by preventing frivolous law-suits, on the one hand, or preventing unreasonable assessments of their worth, on the other. Weatherby therefore supports the holding in this case.
British Car argues that Clayton v. Bryan, 753 So.2d 632 (Fla. 5th DCA 2000), and Moran v. City of Lakeland, 694 So.2d 886 (Fla. 2d DCA 1997) are controlling, but they are distinguishable. Both cases involve specific attorney's fee provisions in federal statutes that preempted section 768.79 under the supremacy clause of the United States Constitution. Such cases involve policies not present when considering a choice of law issue in a case where Florida has an offer of judgment statute and Tennessee does not.
Moran involved a suit under 42 U.S.C. § 1983. The applicable federal statute authorizes fees to a prevailing defendant "only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." Moran, 694 So.2d at 886-87 (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). This limitation on a defendant's ability to recover fees implements Congress's intent to encourage citizens to seek redress for violation of their rights. To allow section 768.79 to override the federal statute would have a chilling effect on the bringing of civil rights lawsuits, contrary to the intent of Congress.
Clayton concerned a suit brought under the Federal Fair Debt Collection Practices Act. That statute provides that fees are to be awarded to a prevailing defendant only when the court expressly finds that the plaintiffs case was "brought in bad faith and for the purpose of harassment." Clayton. 753 So.2d at 633. By this section, Congress leveled the playing field between debtors and creditors. To apply section 768.79 to a case brought under the Act would create the obstacles to bringing suit which Congress expressly sought to avoid.
Recently, the eleventh circuit has held that section 768.79 is substantive under Florida choice of law principles. See *374 McMahan v. Toto, 256 F.3d 1120, 1132 (11th Cir.2001). That ruling is not binding on this court. See Pignato v. Great Western Bank, 664 So.2d 1011, 1015 (Fla. 4th DCA 1995).[4] To reach its conclusion, the eleventh circuit relied primarily on the Article V cases, such as Dvorak and Timmons, an approach which is incorrect for the reasons set forth above. Also, the eleventh circuit wrote that the statute "is properly viewed as a type of `loser pays' rule or standard." McMahan, 256 F.3d at 1134. This pigeonholing of section 768.79 gives inadequate emphasis to the statute's primary purpose of encouraging reasonable settlements. Under the statute, a plaintiff who obtains a judgment may still be responsible for fees if the amount of the judgment is twenty-five percent less than a defendant's offer of judgment.
POLEN, C.J., dissenting.
I believe the trial court correctly denied attorney's fees, and for that reason, I would affirm. To me, the resolution is much simpler than the majority and concurring opinions make it out to be.
While Judge Gross's well-reasoned concurring opinion spends much effort justifying section 768.79 as being procedural rather than substantive, and rejecting the Eleventh Circuit's contrary conclusion in McMahan v. Toto, 256 F.3d 1120, 1132 (11th Cir.2001), to me this statute is both procedural and substantive. But we are not here concerned with the procedural aspect. Whether or not the statute may be deemed "punitive" or a "sanction," the departure from common law principles[5] which allows a court to require one party to pay some of the attorney's fees of the other party (outside the section 57.105 context, with which I am inclined to agree with Judge Gross) makes this a substantive provision.
I agree with that part of the majority's opinion which declares section 768.79 is not unconstitutional, as applied or otherwise. I further agree that Seidman is not estopped from changing its position that section 768.79 should now apply. But the absence of estoppel does not mean we are obligated to accept Seidman's argument. In Seidman I, both parties stipulated that Tennessee law applied to this litigation. As the majority points out, both sides had made offers of judgment under the statute, yet neither side argued in the prior appeal that Tennessee law applied only to the merits. The reasoning of the trial judge here, that Tennessee law did not have a comparable offer of judgment statute, so no attorney's fees could be awarded, should be affirmed. For these reasons, I respectfully dissent.
NOTES
[1] Florida's borrowing statute, section 95.10, Florida Statutes (1999), provides that a cause of action will be barred in this state if it is barred in the state where it arose "because of lapse of time."
[2] Because the underlying cause of action in this case accrued in 1992, the 1991 offer of judgment statute applies. See Twiddy v. Roca, 677 So.2d 387, 388 (Fla. 2d DCA 1996).
[3] Leapai v. Milton, 595 So.2d 12 (Fla.1992), ruled on the constitutionality of section 45.061, Florida Statutes (1987).
[4] It appears that a Florida court's ruling on state law may be binding on federal courts, even where such a ruling specifically contradicts an earlier interpretation of the same law by the eleventh circuit. See Roboserve, Ltd. v. Tom's Foods, Inc., 940 F.2d 1441, 1451 (11th Cir.1991); Nussbaum v. Mortgage Serv. Am. Co., 913 F.Supp. 1548, 1554 (S.D.FIa.1995).
[5] See Young v. Altenhaus, 472 So.2d 1152 (Fla.1985).